SINKFIELD *v.* STRONG.

(No. 86 CVE 13146—Decided January 26, 1987.)

Cleveland Municipal Court.

*Robert E. Epstein,* for Johnnie L. Sinkfield.

*Sidney S. Mallory, Jr.,* for Willie C. Strong.

ADRINE, J. On October 24, 1984, the plaintiff and the defendant herein entered into a written contract for the installation of twenty-nine triple-track aluminum windows at the plaintiff's income property located at 3672 East 142 Street, in the city of Cleveland. The work was to be completed within five weeks of the signing of the contract. The parties agreed upon a contract price of $1,550 for the job. The plaintiff gave the defendant a down payment of $800 for the work.

The defendant, upon receiving the down payment, proceeded to place an order with a manufacturer for the specified number of windows. It was, however, December 4, 1984, more than six days after the scheduled completion date called for in the contract, when the first seven windows were put into place.

On December 4, 1984, when the defendant came to make the initial installations, the plaintiff informed him that she had a check stolen from the mail three days earlier which she had intended to apply to this contract. She therefore asked the defendant if completion of the project could be delayed until she received a replacement. The defendant agreed. The replacement check came on December 21, 1984, and shortly thereafter the plaintiff began to inquire as to when the defendant would be able to complete the work.

The plaintiff's inquiries were met with a series of excuses. Beginning in February 1985, she began to call the defendant on a monthly basis to determine when he would finish the work. The defendant finally told the plaintiff that installation would not be complete until October 1985. In August 1985, the plaintiff hired another company to complete the job.

In addition to the seven windows, the defendant also installed two storm doors at the plaintiff's residence. These storm doors, however, are not mentioned in the written agreement entered into by the parties.

The plaintiff paid the defendant an additional $500 over and above the $800 down payment before she decided to have someone else complete the job. She thereafter initiated the present action alleging that the defendant breached their contract and in so doing committed unfair, deceptive and un-

20

conscionable acts and practices, all in violation of R.C. 1345.02 and 1345.03.

The defendant denied the plaintiff's allegations, maintaining that the plaintiff had asked him to stop the installation of the windows on November 6, 1984, and had subsequently agreed to have him install the two storm doors in place of the previously contracted-for windows. He maintained that this second agreement constituted a new, oral contract.

The defendant, therefore, counterclaimed for the balance of the new contract price, holding that he had fully performed its terms.

A contract comes into existence upon the presence of the following component parts: parties capable of contracting; a lawful subject matter; a sufficient consideration; a meeting of the minds of the parties; an actual agreement between the parties to do or to forbear doing the thing proposed in the agreement; and a compliance with the law in respect of any formal requisites which may pertain to the contract. 17 Ohio Jurisprudence 3d (1980) 440, Contracts, Section 11.

In the instant case, upon examination, the court concludes that these parties did in fact enter into a contractual agreement. The court further concludes that their contract was express in nature and unambiguous in its terms. *Keesey* v. *Glass* (1917), 8 Ohio App. 88, at 91, 30 Ohio C.D. 107, at 109-110. The contract speaks for itself and leaves no place for implication. 17 Ohio Jurisprudence 3d (1980) 429, Contracts, Section 4.

By its terms, the defendant failed to meet the installation date called for by the agreement. That date came and went well before the day that the defendant claims the plaintiff asked to delay further installation. Even if, *arguendo,* it is conceded that the plaintiff's inaction following this breach constituted a ratification, the delays which followed her renewed and repeated requests for installation, beginning approximately two months later, were both unwarranted and unconscionable. The court therefore concludes that the allegations made in the first count of the plaintiff's complaint have been established by a preponderance of the evidence and she is therefore entitled to relief as a result of the defendant's breach of the instant contract.

The plaintiff has also sought relief under the private remedies provisions of R.C. Chapter 1345. R.C. 1345.02(A) prohibits a supplier from committing "an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.03(A) makes it illegal for a supplier to "commit an unconscionable act or practice in connection with a consumer transaction."

R.C. 1345.02(B) specifically enumerates some of the acts which the section declares unlawful, while R.C. 1345.03(B) sets forth circumstances which are to be considered in determining whether an act or practice is unconscionable.

With regard to the matters under discussion here, the court concludes that the plaintiff and the defendant are, respectively, a "consumer" as defined by R.C. 1345.01(D) and a "supplier" as defined by R.C. 1345.01(C). Further, the contract itself is a "consumer transaction" contemplated by R.C. 1345.01(A). This agreement, then, is governed by the requirements of R.C. Chapter 1345 and, if the defendant's conduct is adjudged to be violative of the statute, he is subject to the sanctions provided therein.

The contract which is the subject of this lawsuit was originally to be performed within five weeks of its execution. In reality, nearly a year passed without the defendant's completing his bargain. There can be no question that the defendant's actions in this regard

were unconscionable and, as such, were violative of R.C. 1345.03(B)(6). His allegations of the formation of a new contract are not credible.

The court does not agree with the plaintiff's contention, however, that a finding that the defendant has engaged in an unconscionable act or practice, *ipso facto,* entitles the plaintiff to recover treble damages under the statute. Such damages are provided for in R.C. 1345.09(B). That section notwithstanding, recovery of treble damages is dependent upon compliance with the prerequisites set forth under that subsection. The prerequisites include that:

1. The violation was an act or practice declared to be deceptive or unconscionable by rule adopted by the Attorney General, pursuant to R.C. 1345.05(B)(2); and

2. Said rule must have been adopted prior to the initiation of the consumer transaction on which the action is based.

The same subsection provides, in the alternative, that a plaintiff is entitled to treble damages if it can be shown that:

1. The act or practice complained of had been determined by a court of this state to violate R.C. 1345.02 or 1345.03; and

2. The act or practice was committed after the decision containing the determination was made available for public inspection by the Attorney General pursuant to R.C. 1345.05 (A)(3).

In the case currently pending before this court, none of the prerequisites has been met. In fact, no evidence was presented at trial which would tend to show any effort by the plaintiff to comply with these initial requirements.

Thus, the court concludes that treble damages are not appropriate in this case. The court nonetheless finds that the defendant *knowingly* committed an act or practice which violated R.C. Chapter 1345. He is, therefore, liable to the plaintiff for her reasonable attorney fees limited to the work reasonably performed in the prosecution of this matter.

In so finding, the court adopts the plaintiff's argument that a supplier need not know that the act he commits violates R.C. Chapter 1345. Attorney fees may be assessed if it can be established that the defendant knowingly committed an act which is subsequently determined to violate the Consumer Sales Practices Act (R.C. 1345.01 *et seq.*).

Seven windows were installed under the subject contract. The plaintiff has not posited any complaint about those installations and the court concludes that they were satisfactory. Therefore, the plaintiff has received a benefit from the defendant's efforts and the amount of the damages sought must be diminished to reflect that benefit.

The contract does not specify any differential in the prices of the individual windows which were to be installed by the defendant. The court is therefore left to conjecture as to their relative value. In the absence of clear evidence to the contrary, the contract would appear to distribute the cost of the windows and their installation equally to each unit.

Operating on that assumption, the court finds that the value of the seven installed windows was equal to the contract price divided by twenty-nine, then multiplied by seven, or $374.14. That then is the amount which must be deducted from any damage award.

Pursuant to the foregoing findings of fact and conclusions of law, it is hereby Ordered, Adjudged and Decreed that:

1. Judgment is entered for the plaintiff against the defendant for

breach of contract in the amount of $1,175.86 plus costs and statutory interest.

2. Judgment is rendered for the plaintiff on the defendant's counterclaim.

3. Reasonable attorney fees are awarded to the plaintiff pursuant to R.C. 1345.09(F)(2). The plaintiff is afforded seven days from the journalization of this entry to file with the court a fee bill which meets the requirements set forth in *Swanson* v. *Swanson* (1976), 48 Ohio App. 2d 85, 2 O.O. 3d 65, 355 N.E. 2d 894, and to serve a copy of said fee bill on the defendant. The defendant shall have seven days from the receipt of the fee bill to file his objections and/or exceptions thereto with the court.

*Judgment accordingly.*