## Gable v. Collins
### [Cite as 6 AOA 232]

Case No. 57384
Cuyahoga County, (8th)
Decided August 9, 1990

Roger L. Alexander, 27788 Lorain Road, North Olmsted, Ohio 44070, for Plaintiff-Appellant.

James L. Hamilton, One Erieview Plaza, Suite 1200, Cleveland, Ohio 44114, for Defendant-Appellee.

STILLMAN, J.

Plaintiff, Michael Gable, filed a complaint on February 4, 1988 in Cleveland Municipal Court case number 88-CVF-3674 against defendant Betty Collins, d.b.a. Kenscot Appliance Company alleging breach of contract and consumer fraud in connection with plaintiff's purchase of a used washer and dryer from defendant November 21, 1987.

A bench trial was held after which the trial court issued findings of fact and conclusions of law and judgment entry dated February 6, 1989.[1] Plaintiff filed a motion for new trial pursuant to Civ. R. 59 and for relief from judgment, which motions were denied February 21, 1989 after which plaintiff timely appealed March 8, 1989.

The facts from the trial court's findings of fact and conclusions of law follow:

Plaintiff purchased a used GE washer and dryer from defendant November 21, 1987, which were to be delivered either November 23 (plaintiff's version) or November 25 (defendant's version). In any event, plaintiff testified he made numerous telephone calls to defendant before finally receiving delivery of both machines on December 9, 1987.

Plaintiff testified the washer which was delivered was not the same as the one purchased by him. Defendant concedes this fact but states the washer defendant substituted was ten to twelve years newer than the originally purchased machine.

Both washer and dryer carried a ninety-day limited warranty which provided the warranty would be voided if any tampering with the machines occurred.

Plaintiff expended $13.03 December 11, 1987 on an electrical cord and $93.36 December 12, 1987 on a motor to put the dryer in working order. Plaintiff notified defendant on or about December 15, 1987 that the washer made loud noises during the spin cycle. Defendant did send a repairman to service the washing machine December 18th and 23rd. The repairman testified he thought someone had tampered with the washing machine and that he needed to get additional parts and would return on another date. Further service calls were refused by the plaintiff on January 28, 1988.

The trial court found in its conclusions of law as follows:

"(1) defendant did not violate any provisions of R.C. 1345.02 committing unfair or deceptive consumer sales practices;

"(2) defendant did not violate O.A.C. 109:4-3-09, fail to timely deliver or furnish similar goods at equal value;

"(3) the contract between the parties is rescinded;

"(4) the washer and dryer must be returned to defendant, after which defendant will pay 376.78 to plaintiff, i.e., the original purchase price of $270.41 plus the dryer motor and electrical cord $106.39;

"(5) R.C. 1345.09(F) awarding attorney's fees to the prevailing party does not apply to the facts of this case, hence, neither party is awarded attorney fees."

Plaintiff's first, second and fourth assignments of error follow:

"I. THE COURT ERRED AS A MATTER OF LAW IN FAILING TO FIND THAT SEVERAL ACTS OF THE DEFENDANT VIOLATED R.C. 1345.02 AND R.C. 1345.03 AND THE OHIO ADMINISTRATIVE CODE SUCH THAT PLAINTIFF WAS ENTITLED TO STATUTORY DAMAGES FOR EACH VIOLATION, TO WIT:

"(A) NINE SEPARATE FAILURES TO DELIVER THE MACHINES ON NINE SEPARATE PREVIOUSLY PROMISED DATES, WHERE THERE WAS A PREVIOUSLY PUBLISHED REGULATION AND PREVIOUSLY PUBLISHED CASE LAW COVERING THE POINT.

"(B) TWO SEPARATE FAILURES TO DELIVER MACHINES THAT WORKED AFTER PROMISING TO DO SO, WHERE THERE WAS A PREVIOUSLY PUBLISHED CASE THAT HELD THIS TO BE A VIOLATION OF R.C. 1345.02.

"(C) DELIVERY OF A DIFFERENT MACHINE THAN THE ONE IDENTIFIED TO THE CONTRACT, IN VIOLATION OF A PREVIOUSLY PUBLISHED RULE, O.A.C. 109: 4-3-09.

"II. WHERE SEVERAL ACTS OF THE DEFENDANT WERE INARGUABLY KNOWING VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT, IT WAS ERROR AS A MATTER OF LAW FOR THE COURT TO FAIL TO SO DETERMINE AND NOT TO FOLLOW SOME PROCEDURE TO DETERMINE THE APPROPRIATENESS OF ORDERING ATTORNEY FEES.

IV. THE COURT ERRED AS A MATTER OF LAW IN FAILING TO DETERMINE THAT THE PRACTICE OF THE DEFENDANT IN CONTINUALLY STALLING AND EVADING HER RESPONSIBILITY TO REPAIR THE MACHINES WAS UNCONSCIONABLE AND THAT SUCH PRACTICE AS WELL AS HER PRACTICE OF STALLING AND EVADING HER OBLIGATION TO DELIVER THE MACHINES ENTITLED THE PLAINTIFF TO PUNITIVE DAMAGES."

Plaintiff's first, second and fourth assignments of error lack merit.

Plaintiff argues defendant committed unfair and deceptive sales practices pursuant to the Ohio Consumer Sales Practices Act (CSPA); specifically, R.C. 1345.02 and .03 and Ohio Adm. Code 109:4-3-09(2) by (1) not promptly delivering the washer and dryer in two to four days as promised, but two and one-half weeks after sale; (2) delivering the appliances in non-working condition; (3) substituting a different washing machine than that purchased, thus (4) entitling plaintiff to attorney fees and punitive damages. Plaintiff's arguments are unpersuasive.

R.C. 1345.02 provides in relevant part as follows:

"(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

"(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:

"(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;

"(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;

"(3) That the subject of a consumer transaction is new, or unused, if it is not;

"(4) That the subject of a consumer transaction is available to the consumer for a reason that does not exist;

"(5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section;

"(6) That the subject of a consumer transaction will be supplied in greater quantity than the supplier intends;

"(7) That replacement or repair is needed, if it is not;

"(8) That a specific price advantage exists, if it does not;

"(9) That the supplier has a sponsorship, approval, or affiliation that he does not have;

"(10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false."

R.C. 1345.03 provides in relevant part as follows:

"(A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

"(B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:

"(1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect his interests because of his physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement;

"(2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers;

"(3) Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;

"(4) Whether the supplier knew at the time the consumer transaction was entered into that there was no reasonable probability of payment of the obligation in full by the consumer;

"(5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier;

"(6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to his detriment;

"(7) Whether the supplier has, without justification, refused to make a refund in cash or by check for a returned item that was purchased with cash or by check, unless the supplier had conspicuously posted in the establishment at the time a sign stating the supplier's refund policy." R.C. 1345.03(B) sets forth circumstances to be considered in determining the unconscionability of an act or practice. *Sinkfield v. Strong* (1987), 34 Ohio Misc. 2d 19, 20. We note that the defendants do not dispute they are a "supplier" or that this case involves a "consumer transaction" within the purview of the statute. *Id.* See R.C. 1345.01(A); R.C. 1345.01(C). The general assembly indicated their desire to regulate and control suppliers, and not just completed transactions. *Brown v. Market Development* (1974), 41 Ohio

Misc. 57, 61. The suppliers' activity is pivotal in making a determination of unconscionability.

The plaintiff first argues the failure to deliver promptly on two occasions, nine other failures to deliver and the delivery of a substitute machine were violations of R.C. 1345.02, et *seq.* as well as Ohio adm. Code 109:4-3-09. Plaintiff's argument is unpersuasive.

R.C. 1345.05(B) (2) provides the director of commerce may adopt substantive rules defining acts or practices that violate R.C. 1345.02 relating to unfair or deceptive practices in connection with consumer transactions. Pursuant to that authority, Ohio Adm. Code 109:4-3-09 was adopted and provides:

"109:4-3-09 Failure to deliver; substitution of goods

"(A) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier:

"(1) To advertise or promise prompt delivery unless, at the time of the advertisement the supplier has taken reasonable action to insure proper delivery;

"(2) To accept money from a consumer for goods ordered by mail, telephone, or otherwise and then permit *eight weeks to elapse without;*

"(a) Making shipment or delivery of the goods ordered;

"(b) Making a full refund;

"(c) Advising the consumer of the duration of an extended delay and offering to send him a refund within two weeks if he so requests.

"(d) Furnishing similar goods of equal or greater value as a good faith substitute.

"(B) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to furnish similar goods of equal or greater value when there was no intention to ship, deliver, or install the original goods ordered. *The act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this rule.*

"(C) For the purposes of this rule, goods may not be considered of 'equal or greater value' if they are not substantially similar to the goods ordered, or are not fit for the purposes intended, or if the supplier normally offers the substituted goods at a lower price than the 'regular price' (as defined in rule 109:4-3-04 of the Administrative Code) of the goods ordered." (Emphasis added.)

The trial court found that plaintiff received delivery of the machines within two and one-half weeks and that similar goods of "equal or greater value" were substituted and accepted by the

plaintiff. Furthermore, the court found defendant offered, when the machines malfunctioned, to furnish plaintiff similar goods of equal or greater value and/or make a full refund within the eight-week period specified in Ohio Adm. Code 109:4-3-09. In addition, 'the seller had offered a ninety-day warranty on both machines, yet plaintiff submitted bills to the trial court for an electrical cord and dryer motor only two and three *days after delivery* which he installed himself, voiding the warranty on the dryer. Therefore, the trial court properly determined that defendant did not violate any provisions of R.C. 1345.02 or Ohio Adm. Code 109:4-3-09 since nothing in either section indicated defendant's conduct was deceptive or unconscionable.

This case is factually distinguishable from the case of *Robinson v. Valeton Motors, Inc.* (Dec. 4, 1979), Lucas App. No. L-79-085, unreported, which plaintiff cites to indicate prompt delivery must be made on a specified date or a full refund of the deposit given to the buyer. The court, in *Robinson,* held that an auto dealer violated R.C. 1345.02 by failing to include in the written sales agreement the vehicle's orally promised delivery date.

Unlike the instant case, the oral promise of a certain delivery date in *Robinson* was held to be a material term of the consummated sale. *Sharpe v. Cohen, Inc.* (February 23, 1989), Cuyahoga App. No. 55080, unreported. Since defendant's conduct was neither deceptive nor unconscionable, the trial court did not err in finding defendant did not violate the CSPA. *Breuer v. Freedom Movers, et al.* (February 15, 1990), Cuyahoga App. No. 58038, unreported.

Plaintiff argues he is entitled to attorney fees and punitive damages from defendant.

Pursuant to R.C. 1345.09(F) (2) a trial court may award a consumer reasonable attorney fees when the supplier in a consumer transaction intentionally committed an act or practice which is deceptive, unfair or unconscionable. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St. 3d 27 at syllabus. Treble damages are also available to a plaintiff if a supplier is found to have committed an unfair or deceptive trade practice. R.C. 1345.09(B); *Daniels v. True* (1988), 47 Ohio Misc. 2d 8, 10-11; *Sinkfield v. Strong, supra; Sharpe, supra.* Since defendant did not violate R.C. 1345.01, et *seq.,* of the CSPA, the trial court in the case *sub judice* properly refused to a ward punitive damages or attorney fees.

Accordingly, plaintiff's first, second and fourth assignments of error are not well taken and overruled.

Plaintiff's third assignment of error follows: "THE COURT ERRED AS A MATTER OF LAW IN PURPORTING TO GRANT RESCISSION, WHERE PLAINTIFF PRAYED FOR DAMAGES, TRIED THE CASE ON A DAMAGES THEORY, SUBMITTED A TRIAL BRIEF SO STATING AND WHERE PLAINTIFF BY HIS LABOR HAD MADE THE APPLIANCES WORKABLE SUCH THAT RESCISSION WAS NO LONGER APPROPRIATE. THIS ERROR THE COURT COMPOUNDED BY REFUSING TO RECAST ITS DECISION AFTER JUDGMENT WHEN IT WAS PROPERLY BROUGHT TO THE COURT' S ATTENTION THAT PLAINTIFF HAD SOLD THE HOUSE IN WHICH THE MACHINES WERE INSTALLED WITH THE MACHINES LEFT THERE AND PLAINTIFF WAS NOT IN ANY EVENT THEN ABLE TO BRING BACK THE MACHINES."

Plaintiff's third assignment of error lacks merit.

R.C. 1345.09 gives a consumer the alternative of either rescinding the transaction on which the deceptive or unconscionable act was based or recovering damages up to three times those actually incurred; the statute fails to grant the trial court the discretion to elect as between the two. *Bierlein v. Alex's Continental Inn, Inc.* (1984), 16 Ohio App. 3d 294, 298.

Plaintiff argues the trial court erred in awarding rescission of the contract for two reasons:

(1) plaintiff elected to be awarded damages; and (2) rescission is not a proper remedy since there has been a substantial change in the subject matter since plaintiff's home was sold with the two machines.

Since the trial court found no violation of any act prohibited by R.C. 1345.02, *et seq.,* plaintiff's argument lacks merit. In addition plaintiff's complaint requested money damages *and* rescission or revocation of the contract.

Plaintiff's cites *Reichert v. Ingersoll* (1985), 18 Ohio St. 3d 220, for the proposition that a "substantial change in the condition of the consumer transaction" had occurred making rescission inappropriate.

In *Reichert,* a clear violation of the CSPA by defendant had occurred and the goods involved were construction materials used in home improvements on a private residence. *Id.* Clearly,

the facts in *Reichert* are contrary to the case at bar where the court found no violation of the CSPA and a washer and dryer are easily movable appliances. The trial court had no evidence before it that plaintiff had sold his home with the machines included. Furthermore, those two machines could have added substantial value to plaintiff's home sale thereby unjustly enriching plaintiff at defendant's expense.

The court fashioned a reasonable solution by ordering the original sales contract rescinded; defendant to return the sale price plus the cost of repairs of the dryer, *i.e.,* $376.78 to plaintiff upon return of the operable washer and dryer to defendant.

Accordingly, rescission was a proper remedy under the circumstances since defendant did not violate the CSPA and no substantial change in the subject of the consumer transaction occurred. Id. Rescission of the contract would thus have placed the parties in their pre-sale positions. *Arrow International, Inc. v. Rolls-Royce Motors, Inc.* (April 17, 1986), Cuyahoga App. Nos, 50305 and 50341, unreported.

Plaintiff's third assignment of error is not well taken and overruled. Judgment affirmed.

CORRIGAN. P.J., and ROHRS J., concur.

Judge Saul G. Stillman, Retired, Eighth Appellate District; Kenneth A. Rohrs, Judge of the Henry County Court of Common Pleas, Sitting by Assignment.

---

[1] This five-page document constitutes the record on appeal since no transcript or 9(C) or 9(D) statement was provided to the appellate court.