SIMPSON ET AL. *v.* SMITH ET AL. ▌

(No. 86-CVH-0679 — Decided April 3, 1987.)

Licking County Municipal Court.

*John I. Peters,* for plaintiffs:
*Timothy P. Smith, pro se.*
*Bernard Brush,* for defendants Gary and Dale Willis.

FROST, J. This matter was commenced by the filing of a complaint on July 29, 1986 wherein it was alleged by the plaintiffs, Carl E. Simpson and Terri Gatewood, that Timothy C. Smith, one of the co-defendants herein, had contracted to perform mechanical and body service on a 1965 Ford Mustang owned by the plaintiffs and that some work had been performed, but that defendant Smith refused to return the automobile to the owners without being first paid for the services rendered and that the automo-

bile was being wrongfully withheld. The plaintiffs further alleged that Smith, as well as co-defendants, Dale Willis and Gary Willis, committed violations of the Ohio Consumer Sales Practices Act and as a result thereof the plaintiffs had been damaged. The plaintiffs requested in their complaint that the court order a return of the automobile and damages.

On September 2, 1986, Dale Willis and Gary Willis filed an answer to the complaint denying the allegations and setting forth the defense that no privity existed between themselves and the plaintiffs. On September 19, 1986, Smith filed his answer and counter-claim denying the allegation and claiming an amount due and owing from the plaintiffs for services performed.

A replevin hearing for the immediate return of the automobile was scheduled for September 22, 1986 at which the plaintiffs and Smith appeared. At the hearing it was discovered that Smith had obtained a new certificate of title to the automobile as a result of his alleged garageman's lien by applying for the new title through the procedures authorized by R.C. 4505.101. It was agreed at the hearing that the plaintiffs and Smith would place both certificates of title in escrow with the court, that the plaintiffs would post $500 with the court as bond on the replevin action, and that the automobile would be returned to the plaintiffs subject to the final disposition of the case. The attorneys for the parties were directed to prepare and submit a proposed judgment entry to the court containing the above-stated agreement. This judgment entry was filed with the court on September 26, 1986, four days later. In the meantime, however, Smith sold the automobile to another person identified as Marvin Lilley who allegedly lived in Florida. A hearing was held to determine whether Smith should be held in contempt of court for his failure to abide by the agreement entered into by the parties. Smith's attorney withdrew as counsel in the case and Smith appeared at the hearing unrepresented. From the testimony taken, Smith was found in contempt of court and sentenced to ten days in jail. The automobile was never relocated and attempts to join Lilley as a party to this action have remained unsuccessful since his residence is unknown to the parties.

At the trial herein plaintiff Gatewood testified that her father had purchased the 1965 Mustang for her use and that it needed some minor body and mechanical repairs. She placed an advertisement with a business establishment soliciting persons to perform the requested repairs. Smith contacted Gatewood by telephone concerning the work to be performed. According to Gatewood, Smith came to her house and gave her a verbal estimate for the repairs. The testimony from both Gatewood and Smith is confusing as to the amount agreed upon for both mechanical and body work. It is clear that Gatewood never requested, and Smith never offered, a written estimate concerning the repairs to be performed. Later that same day, Smith returned to the Gatewood residence with a wrecker and a wrecker driver. Although Gatewood did not see who was driving, she did notice the name of "Willis Garage" on the side of the truck. The car was then towed to the Willis Garage where Smith told Gatewood he would be performing the repairs. Gatewood testified that she thought Smith was associated in some manner with the Willis Garage.

Although the repairs were to be completed within two weeks, they were not completed within that length of time and Gatewood began to inquire as to the status of the repair work. On several occasions Gatewood stopped at

the Willis Garage to determine when the car repairs would be completed and talked to Smith at the garage. Smith advised Gatewood that $411 was needed, although Gatewood testified that she was never clear for what the money was being paid. Nevertheless, a check was issued to "Willie's Garage [*sic*]" in the amount of $411 and given to Smith. Smith testified that the check was then given to Willis Garage for mechanical work which employees of Willis Garage performed on the automobile.

Thereafter, the relationship between Smith and Gatewood deteriorated and although Gatewood purchased some parts and Smith installed the parts, the parties became dissatisfied with each other. Gatewood performed an inspection of the complete repairs and found some faults with the paint application. Smith testified that he corrected the problem and advised Gatewood to pay for the services and he would release the automobile. Payment was not forthcoming and the plaintiffs eventually filed this action.

Both Gary Willis and Dale Willis testified that Smith did not work as an employee for them or for the garage. They testified that Smith entered into an agreement with Gary Willis, the owner of the garage, to exchange services. The agreement was that Smith would be allowed to use the garage to perform some work on an automobile Dale Willis and Gary Willis thought was owned by Smith. In return, Smith agreed to perform some body work on a truck which was owned by Gary Willis and used in the course of the mechanical repair business performed by the Willis Garage. Smith confirmed that he was never employed by either Dale Willis or Gary Willis and that he was simply allowed to work in the garage as part of the above-stated agreement. Gatewood thought that Smith was an employee of Willis Garage and testified that Smith had told her he was an employee but admitted that neither Dale Willis nor Gary Willis had advised her that Smith was employed by them.

Finally, Simpson, as the owner of the automobile, testified that he purchased the 1965 Mustang for his daughter and that he considered it to be a collector's item. He admitted that he had purchased the automobile a few months earlier and had listed the value on the certificate of title as $200. He explained that the previous owner needed to liquidate his assets quickly and that is the reason why he was able to purchase the automobile at such a reduced price. Simpson testified that he considered the value of the automobile to be approximately $3,000 due to the fact that it was considered to be a classic vehicle with a collector's item appeal.

This court finds as a matter of law that it has jurisdiction over this matter under the authority of R.C. 1345.01 *et seq.* The contract for repair of the automobile was for "personal, family, or household" purposes, and therefore was a consumer transaction within the meaning of R.C. 1345.01(A). Further, Smith was a "supplier" within the meaning of R.C. 1345.01(C) in that he "engaged in the business of effecting * * * [a] consumer transaction * * *," as evidenced by the fact that he responded to a solicitation to perform automobile repairs for hire and he arranged for and secured the use of garage facilities for the purpose of engaging in the business of performing such repairs.

Having found jurisdiction to hear this matter, this court now proceeds to determine whether the defendants have committed a violation of the Ohio Consumer Sales Practices Act. Pursuant to the authority granted under R.C. 1345.05 and R.C. Chapter 119, substantive rules have been adopted by

the Attorney General and are applicable herein. These rules detail deceptive acts or practices in connection with consumer transactions. Specifically, Ohio Adm. Code 109:4-3-13 deals with deceptive sales practices concerning motor vehicle repairs or service.

The court finds that defendant Smith committed an unfair or deceptive consumer sales practice as prohibited by R.C. 1345.02(A), by violating Ohio Adm. Code 109:4-3-13 (A)(1). That latter section reads as follows:

"It shall be a deceptive act or practice in connection with a consumer transaction involving the performance of either repairs or any service upon a motor vehicle where the anticipated cost exceeds twenty-five dollars and there has been face to face contact at the supplier's place of business during the hours such repairs or services are offered, between the consumer or his representative and the supplier or his representative, prior to the commencement of the repair or service for a supplier to:

"(1) Fail, at the time of the initial face to face contact and prior to the commencement of any repair or service, to provide the consumer with a form which indicates the date, the identity of the supplier, the consumer's name and telephone number, the reasonable anticipated completion date and, if requested by the consumer, the anticipated cost of the repair or service. The form shall also clearly and conspicuously contain the following disclosures in substantially the following language:

" 'ESTIMATE

" [']YOU HAVE THE RIGHT TO AN ESTIMATE IF THE EXPECTED COST OF REPAIRS OR SERVICES WILL BE MORE THAN TWENTY-FIVE DOLLARS. INITIAL YOUR CHOICE:

___written estimate
___oral estimate
___no estimate' "

Smith failed at the time of the initial face-to-face contact with Gatewood, and prior to the commencement of any repairs, to give Gatewood any form which indicated the date, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated completion date, or notice of Gatewood's right to obtain a written or oral estimate. If this had been provided, then possibly the problems of this case could have been avoided. The fact that Gatewood did not ask for a written estimate is not controlling on this issue. Gatewood was still entitled to a written notice of her right to a written estimate. In fact, had Smith complied with this requirement, it is likely that the initial confusion over the anticipated cost of repairs could have been prevented. Even though an oral estimate was given, such estimate should have been noted on the form which Smith failed to provide.

Likewise the court further finds a violation of Ohio Adm. Code 109:4-3-13(A)(2). Smith committed an unfair or deceptive sales practice by not providing a separate form with the required language of the above-stated Ohio Administrative Code section. Pursuant to that section, it is a deceptive practice for the supplier to:

"(2) Fail to post a sign in a conspicuous place within that area of the supplier's place of business to which consumers requesting any repair or service are directed by the supplier or to give the consumer a separate form at the time of the initial face to face contact and prior to the commencement of any repair or service which clearly and conspicuously contains the following language:

" 'NOTICE

" [']IF THE EXPECTED COST

OF A REPAIR OR SERVICE IS MORE THAN TWENTY-FIVE DOLLARS, YOU HAVE THE RIGHT TO RECEIVE A WRITTEN ESTIMATE, ORAL ESTIMATE, OR YOU CAN CHOOSE TO RECEIVE NO ESTIMATE BEFORE WE BEGIN WORK. YOUR BILL WILL NOT BE HIGHER THAN THE ESTIMATE BY MORE THAN TEN PERCENT UNLESS YOU APPROVE A LARGER AMOUNT BEFORE REPAIRS ARE FINISHED. OHIO LAW REQUIRES US TO GIVE YOU A FORM SO THAT YOU CAN CHOOSE EITHER A WRITTEN, ORAL, OR NO ESTIMATE.' "

Although this is similar in nature to the form required by Ohio Adm. Code 109:4-3-13(A)(1), the provisions relate to the situation in this case in which the anticipated cost of repairs exceeded what Gatewood originally understood the total cost to be.

After the repairs were completed, Smith failed to provide Gatewood an itemized list of repairs performed and services rendered. Smith demanded payment after all repairs were completed but no itemized list was tendered. Again, Smith committed a deceptive act pursuant to Ohio Adm. Code 109:4-3-13(C)(12). That section states:

"In any consumer transaction involving the performance of any repair service upon a motor vehicle it shall be a deceptive act or practice for a supplier to: * * *

"(12) Fail to provide the consumer with an itemized list of repairs performed or services rendered, including a list of parts or materials and a statement of whether they are used, remanufactured or rebuilt, if not new, and the cost thereof to the consumer, the amount charged for labor, and the identity of the individual performing the repair or service[.]"

In addition to the deceptive practices previously stated, Smith further committed an unconscionable consumer sales practice. R.C. 1345.03 prohibits suppliers from committing unconscionable sales practices. The prohibition of R.C. 1345.03(A) is set forth as follows:

"No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

This court finds that Smith committed an unconscionable consumer sales practice by obtaining a new certificate of title for the motor vehicle in question without fully complying with R.C 4505.101. Smith falsely and wrongfully tendered affidavits to secure the issuance of a new title and failed to provide the record owner, Carl E. Simpson, with written notice by certified mail of the intention of the defendant to obtain a new title for purposes of reselling the vehicle. Smith testified that he thought he had complied with the various requirements; however, a review of the testimony reveals very little to indicate that Smith complied with any of the requirements. To make matters worse, at the time of the issuance of the new title Smith knew the matter was under dispute.

Smith's complete lack of compliance with the law and his utter disregard for the consequences leads this court to find an unconscionable consumer sales practice. The act itself regardless of motive requires this finding. As was stated in *Brown* v. *Market Development, Inc.* (C.P. 1974), 41 Ohio Misc. 57, 62, 68 O.O. 2d 276, 279, 433 N.E. 2d 367, 371:

"It is significant that it is the activity of the supplier that is pivotal in making the determination of unconscionability, and not the character or

nature of a completed transaction with a consumer, nor the actual mental state of the consumer."

The act of proceeding to sell the automobile with the wrongfully issued new title while the question of ownership and other legal issues were pending before the court is also arguably unconscionable. The court has chosen to find that act to be in contempt of the court's order and has provided its sanction accordingly.

With regard to the two other defendants, Dale Willis and Gary Willis, the plaintiffs argue that they also should be found to have committed various deceptive and unconscionable consumer sales practices, particularly in light of the fact that some service was performed by them on the automobile as evidenced by the fact that Smith extracted a check from Gatewood to pay for those services. The testimony in this case does not bring these two defendants within the meaning of the "supplier" as it is used in R.C. 1345.01(C). Both Dale Willis and Gary Willis were under the mistaken impression that Smith was working on a car in their garage which belonged to Smith and under an exchange agreement whereby Smith would perform additional work for them in return for their allowing Smith to work on the automobile at their garage. There was no testimony presented which would cause this court to believe otherwise.

Although the definition of "supplier" as provided in R.C. 1345.01(C) does not require direct contact with the consumer, this court finds that some privity of contract, regardless of how minimal, must exist before a person may be considered a supplier within the meaning of Ohio's Consumer Sales Practices Act. Gary Willis and Dale Willis were not agents, partners, employees, or employers of Smith. From the testimony presented,

this court believes that they were simply unknowing parties to this scenario and cannot be found to have violated the provisions of the Consumer Sales Practices Act through any reasonable theory of *respondeat superior*.

In determining damages in this matter, the court is directed to R.C. 1345.09. The specific private remedies available to the plaintiffs in this matter are set forth in R.C. 1345.09(A) and (B) and provide:

"For a violation of Chapter 1345 of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:

"(A) Where the violation was an act prohibited by section 1345.02 or 1345.03 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover his damages.

"(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended."

Rescission, although technically available to the plaintiffs, is not a practical remedy since the return of the $411 would not make them whole given the fact that they do not have

and cannot obtain the vehicle. In determining the amount of damages to award, this court should look at the injury occasioned by the violation of Ohio's Consumer Sales Practices Act.

Where the violation as committed herein was one in which the plaintiffs failed to receive the form as required but where the plaintiffs did receive an oral estimate, the damages are nominal and the court awards damages in the amount of $200 for each violation of that nature. Therefore, the court awards damages in the amount of $200 for the violation of Ohio Adm. Code 109:4-3-13(A)(1) — failure to provide initial information form; and further the court awards damages in the amount of $200 for the violation of Ohio Adm. Code 109:4-3-13(A)(2) — failure to furnish right to an estimate form.

With regard to the failure of Smith to provide the plaintiffs with an itemized list of repairs performed or services rendered as mandated by Ohio Adm. Code 109:4-3-13(C)(12), the plaintiffs are entitled to three times the amount of actual damages incurred. Therefore, since the plaintiffs paid $411 for some services but were never advised in writing or otherwise what services where rendered for the consideration paid, the plaintiffs are awarded the sum of $1233.

· Finally, this court finds that the most outrageous conduct exemplified by the facts presented was the acquisition of the title to the vehicle and its resale pending resolution of the dispute. The court finds such conduct to be utterly unconscionable and awards to the plaintiffs the sum of $3,000 which represents the entire, unrebutted value of the automobile as damages for the commission of the unconscionable consumer sales practice committed in violation of R.C. 1345.03.

Therefore, the court awards a judgment to the plaintiffs and against the defendant Timothy P. Smith in the amount of $4,663 together with interest at the rate of ten percent per annum from the date of the filing of this entry.

Turning now to the issue of attorney fees as requested by the plaintiffs and statutorily provided for pursuant to R.C. 1345.09(F)(2), the plaintiffs argue that reasonable attorney fees should be awarded since Smith knowingly committed the violation herein enumerated. Although the defendant claims he did not know he was violating the law, this court finds that an award of attorney fees is reasonable under these facts and circumstances. The "supplier" need not have knowingly violated the Act; he need only to have knowingly committed the act or practice which was found to violate the statute. See *Rashid* v. *Cherokee Motors, Inc.* (1981), Hamilton C.P. No. A 80006561, unreported. The court shall notify the parties herein of the hearing date and time to present evidence concerning the award of attorney fees.

The complaint against the co-defendants Gary Willis and Dale Willis is hereby dismissed with prejudice. The counterclaim of defendant Timothy P. Smith is hereby dismissed with prejudice.

*Judgment accordingly.*