ALBERT, Appellee,

v.

BOATSMITH MARINE SERVICE & STORAGE, Inc., Appellant.

[Cite as *Albert v. Boatsmith Marine Service & Storage, Inc.* (1989), 65 Ohio App.3d 38.]

Court of Appeals of Ohio,
Hamilton County.

No. C–880425.

Decided Oct. 11, 1989.

*Mechley, Robbins & Kelly Co., L.P.A.,* and *Richard B. Uhle, Jr.,* for appellee.

*Cobb & Oldfield* and *James L. Cobb,* for appellant.

---

*Per Curiam.*

Defendant-appellant, Boatsmith Marine Service & Storage, Inc., appeals from the dismissal of its counterclaim, and the judgment in which the trial court awarded damages in favor of plaintiff-appellee, Thomas A. Albert, in the sum of $2,043, with $1,500 attorney fees for an unfair or deceptive consumer sales practice in violation of R.C. 1345.02. Plaintiff filed a cross-appeal, which was voluntarily dismissed. Defendant's assignments of error are summarized as follows: (1) the evidence was insufficient to establish a violation of R.C. 1345.02; (2) the trial court erroneously awarded attorney fees to plaintiff; and (3) the trial court erroneously disregarded the necessity for plaintiff to mitigate his damages. Although defendant's first and third assignments of error have no merit, the second assignment of error is well taken.

For twenty-seven years, defendant has been in the business of boat repair and storage. After having his damaged 1969 Drifter houseboat towed to defendant's shop, plaintiff personally engaged defendant to repair the damage. The adjuster for plaintiff's insurance carrier examined the damaged houseboat at defendant's business premises and informed defendant that his company would pay $10,200 toward the repairs. Plaintiff also requested defendant to perform additional cosmetic work, unrelated to the damage, which included sandblasting and painting the hull and mounting a generator. When defendant had not returned the boat after eleven months, plaintiff requested defendant to give him the houseboat although it had not been water-tested. As plaintiff drove the houseboat from defendant's business, he noted difficulty in shifting into reverse. About a mile from defendant's business the houseboat stopped, and plaintiff could not restart it. He docked the boat at a friend's property, and one and one-half weeks later employed another boat mechanic to make the houseboat operable, and to complete what he claimed was a defective paint job.

Plaintiff's amended complaint contained claims for breach of contract, breach of warranty and violation of the Consumer Sales Practices Act based upon defendant's failure to provide an estimate and its installation of a used, rather than a new, outdrive. Following a bench trial, the trial court granted judgment for the plaintiff, finding that defendant violated the Consumer Sales Practices Act, and dismissed defendant's counterclaim.

In its first assignment of error, based upon insufficiency of the evidence, defendant contends that it did not violate R.C. 1345.02 because it provided a written estimate to the insurance adjuster. Defendant has not challenged that this transaction is subject to the Consumer Sales Practices Act. As provided in R.C. 1345.05(B), the Attorney General has adopted substantive rules defining deceptive acts or practices which violate R.C. 1345.02. Specifically, Ohio Adm.Code 109:4–3–05 states in pertinent part:

"(A) It shall be a deceptive act or practice in connection with a consumer transaction involving the performance of either repairs or any service where the anticipated cost exceeds twenty-five dollars and there has been face to face contact between the consumer or his representative and the supplier or his representative, prior to the commencement of the repair or service for a supplier to:

"(1) Fail, at the time of the initial face to face contact and prior to the commencement of any repair or service, to provide the consumer with a form which indicates the date, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated completion date and, if requested by the consumer, the anticipated cost of the repair or service. The form shall also clearly and conspicuously contain the following disclosures in substantially the following language:

" 'ESTIMATE

"YOU HAVE THE RIGHT TO AN ESTIMATE IF THE EXPECTED COST OF REPAIRS OR SERVICES WILL BE MORE THAN TWENTY–FIVE DOLLARS. INITIAL YOUR CHOICE:

"_____ written estimate

"_____ oral estimate

"_____ no estimate'

" * * *

"(D)(6) Charge for any repair or service which has not been authorized by the consumer;

" * * *

"(12) Fail to provide the consumer with an itemized list of repairs performed or services rendered, including a list of parts or materials and a statement of whether they are used, remanufactured, or rebuilt, if not new, and the cost thereof to the consumer, the amount charged for labor, and the identity of the individual performing the repair or service."

Plaintiff denied that defendant gave him an oral or written estimate at any time. He testified that defendant " * * * just said the insurance would take care of it." Although defendant's chief officer and mechanic described plaintiff's houseboat as a "do-it-yourself nightmare," he acknowledged that he could have put the houseboat in good working order for $10,000.

While defendant offered three worksheets noting labor, parts and charges as exhibits, they do not contain the required information set forth in Ohio Adm.Code 109:4–3–05(A)(1). Furthermore, each blank designated for authorization by the consumer of the repairs is unsigned, and there is no reference to used parts. However, defendant maintains that his dealings with the insurance adjuster, as plaintiff's representative in determining the amount of insurance, satisfied the estimate requirements of Ohio Adm.Code 109:4–3–05. This argument is refuted by the adjuster's testimony that the consumer, and not the insurance carrier, is the person to authorize a supplier to make repairs, as reflected by the fact that the insurance carrier's check for the repairs was sent to plaintiff rather than to defendant. For the purpose of satisfying Ohio Adm.Code 109:4–3–05, it cannot be inferred that an insurance carrier is acting as the consumer's representative absent its signed authorization on the purported estimate.

■■■ Although the record contains no evidence of the houseboat's diminished fair market value by use of used parts, the record does establish that the trial court, in assessing damages, accepted plaintiff's evidence showing the sum of $2,743 spent for repairs to correct the defendant's defective work and painting, and deducted $700, representing a credit for rug installation which plaintiff admitted was refunded by defendant. Where personal property is damaged, the reasonable cost or value of repairs is a proper measure of damages. *Buckeye Molding Co. v. General Tel. Co. of Ohio* (Dec. 12, 1979), Clinton App. No. 388, unreported. Evidence of the reasonable cost of repairs is sufficient to sustain a judgment in an amount equal to the cost of repair. *Youkilis v. Owens* (Sept. 13, 1978), Hamilton App. No. C–77385, unreported.

■■ Sitting as the trier of the facts, the trial court must weigh the evidence and determine credibility of the witnesses. A reviewing court will not reverse a judgment where, as here, there is substantial evidence upon which the trial court could reasonably conclude that the elements of a *prima facie* case were established by a preponderance of the evidence. See *Ross v. Ross* (1980), 64 Ohio St.2d 203, 18 O.O.3d 414, 414 N.E.2d 426.

■■■ In its second assignment of error, defendant contends that the trial court erroneously awarded attorney fees because plaintiff failed to prove that any violation of the Consumer Sales Practices Act by defendant was done

knowingly as required by R.C. 1345.09(F)(2). We agree with the reasoning of the Montgomery County Court of Appeals in *Bierlein v. Alex's Continental Inn, Inc.* (1984), 16 Ohio App.3d 294, 16 OBR 325, 475 N.E.2d 1273, that since attorney fees constitute an extraordinary statutory remedy, the phrase "knowingly committed an act or practice that violates this chapter" means actual awareness of the Act's violation. The definition of "knowledge" in R.C. 1345.01(E) states:

" 'Knowledge' means actual awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness."

The record contains sufficient evidence to support the trial court's conclusion that defendant knowingly violated Ohio Adm.Code 109:4–3–05 based upon inferences drawn from the nature of defendant's business, the length of time engaged in that business, and its experience in routinely dealing in consumer transactions in which insurance was involved.

██ However, the evidence is insufficient to support the amount of attorney fees awarded by the trial court. Pursuant to R.C. 1345.09(F), the trial court may award the prevailing party "a reasonable attorney's fee limited to the work reasonably performed." While the amount is within the trial court's discretion, the record must contain evidence of the time spent by the attorney and the reasonable rate for the attorney's time. *Hlavin v. W.E. Plechaty Co.* (1971), 28 Ohio App.2d 43, 57 O.O.2d 69, 274 N.E.2d 570; *Bierlein v. Alex's Continental Inn, Inc., supra; Perdikakis v. McGee* (Feb. 2, 1983), Hamilton App. No. C–810977, unreported, 1983 WL 5412. The only evidence concerning plaintiff's attorney fees is his own testimony that he paid $700 to his attorney and would be required to pay $1,000 in the future. Therefore, the case must be remanded for a hearing to determine attorney fees.

██ In its third assignment of error, defendant contends that the trial court erroneously rejected its evidence which established that plaintiff did not afford it an opportunity to cure any alleged defects as required by R.C. 1302.65.[1] It is undisputed that after acceptance of the houseboat, plaintiff personally gave notice of the defects to defendant. Whether plaintiff gave defendant a reasonable time to cure the defects is a factual determination. See *Kabco Equip. Specialists v. Budgetel, Inc.* (1981), 2 Ohio App.3d 58, 2 OBR 65, 440 N.E.2d 611. Plaintiff's testimony that he waited one and one-half weeks before engaging another mechanic and defendant's acknowledge-

---

1. Defendant's reliance on R.C. 1302.52, relative to a seller's right to cure nonconforming tender, applies only when tender or delivery is rejected, and is, therefore, inapplicable.

ment that despite several efforts he had not contacted plaintiff was a sufficient basis for the trial court's judgment.

The trial court's judgment is affirmed as to the defendant's first and third assignments of error, but reversed as to the second assignment of error, and this cause is remanded solely for a hearing and determination on the issue of the amount of attorney fees to be awarded to plaintiff.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

SHANNON, P.J., UTZ and GORMAN, JJ., concur.