**CRYE, Appellee,**

v.

**SMOLAK, d.b.a. Jerry's Automatic Transmission, Appellant.**

[Cite as *Crye v. Smolak* (1996), 110 Ohio App.3d 504.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APG10–1369.

Decided April 23, 1996.

*Bernard M. Floetker,* for appellee.

*Steven E. Hillman,* for appellant.

TYACK, Judge.

On May 17, 1995, Charles M. Crye filed a complaint in the Franklin County Municipal Court against Gerald Smolak, d.b.a. Jerry's Automatic Transmission ("Jerry's"). The complaint included allegations that Smolak committed various violations of the Consumer Sales Practices Act ("CSPA") in connection with a transaction involving the repair of Crye's motor vehicle. Ultimately, a nonjury trial was held.

At the conclusion of the trial, the trial court stated its decision, which included findings of various violations of R.C. Chapter 1345 and related, substantive rules. The trial court also found Crye was entitled to attorney fees. Pursuant to Smolak's request, the trial court filed written findings of facts and conclusions of law. The trial court found Smolak knowingly violated three CSPA substantive rules and failed to timely perform the repair. The trial court awarded Crye $200

for each rule violation, $136 in actual damages for the untimeliness, which was trebled to $408, and $2,700 for attorney's fees. Smolak, d.b.a. Jerry's Automatic Transmission ("appellant"), has timely appealed from the trial court's judgment entry in favor of Crye ("appellee"), assigning three errors for our consideration:

"1. The court erred in finding that the Appellant committed violations of the Consumer Sales Practices Act entitling the Appellee to damages.

"2. The court erred in finding that the Appellee suffered damages in the amount of $1008.00.

"3. The court erred in finding that Appellee was entitled to attorney fees in the amount of $2,700.00."

In his first assignment of error, appellant contends that the evidence and the law do not support the trial court's finding that he violated the CSPA. As to the sufficiency-of-the-evidence argument, the Supreme Court of Ohio held in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

Pursuant to R.C. 1345.05(B)(2), the Attorney General has adopted rules setting forth acts that violate the CSPA. The trial court found that appellant had violated three such rules. The facts underlying these violations are as follows. Appellee brought his 1982 Toyota Celica to appellant for repair. The car was partially disassembled to see what was wrong with it. Appellant orally gave appellee five estimates for five different ways to repair the car's engine, which included repairing and overhauling the existing engine, installing a new short block, installing and repairing a used engine, installing and repairing a remanufactured engine, or installing and repairing a used short block that appellant had found. Appellee chose the least expensive repair—the used short block. At this time, appellee was given a form to sign. The form contained the language found in Ohio Adm.Code 109:4–3–13(A)(1) regarding the right to an oral or written estimate. Appellee signed the form. Appellee never got a copy of this form. Problems ensued with the used short block. Disputes then arose regarding the terms of the repair. This suit followed.

The first violation the trial court found involved Ohio Adm.Code 109:4–3–13(A)(1), which states:

"It shall be a deceptive act or practice in connection with a consumer transaction involving the performance of either repairs or any service upon a motor vehicle where the anticipated cost exceeds twenty-five dollars and there

has been face to face contact at the supplier's place of business during the hours such repairs or services are offered, between the consumer or his representative and the supplier or his representative, prior to the commencement of the repair or service for a supplier to:

"(1) Fail, at the time of the initial face to face contact and prior to the commencement of any repair or service, *to provide* the consumer with a form which indicates the date, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated completion date and, if requested by the consumer, the anticipated cost of the repair or service. The form shall also clearly and conspicuously contain the following disclosures in substantially the following language:

" 'ESTIMATE

"YOU HAVE THE RIGHT TO AN ESTIMATE IF THE EXPECTED COST OF REPAIRS OR SERVICES WILL BE MORE THAN TWENTY–FIVE DOLLARS. INITIAL YOUR CHOICE:

"___ written estimate

"___ oral estimate

"___ no estimate'." (Emphasis added.)

The trial court stated that appellant violated the above provisions by failing to "advise" appellee of his right to have a written estimate prior to the commencement of repairs. The trial court's use of the word "advise" is misleading, since Ohio Adm.Code 109:4–3–13(A)(1) uses the word "provide." However, the evidence supports a finding of a violation of Ohio Adm.Code 109:4–3–13(A)(1) because appellant did not provide appellee with such a form at the initial face-to-face contact. The uncontroverted evidence shows that appellee saw, signed and presumably read the form only once, and that this was after the initial face-to-face contact. Because appellant failed to provide appellee with such a form at the time of the initial face-to-face contact, he violated Ohio Adm.Code 109:4–3–13(A)(1), and the trial court did not err in finding such a violation.

■ The trial court also found that appellant violated Ohio Adm.Code 109:4–3–13(C)(4), which states:

"In any consumer transaction involving the performance of any repair or service upon a motor vehicle it shall be a deceptive act or practice for a supplier to:

" * * *

"(4) Fail to disclose *prior to acceptance of any motor vehicle for inspection,* repair, or service, that in the event the consumer authorizes commencement but

does not authorize completion of a repair or service, that a charge will be imposed for disassembly, reassembly, or partially completed work. * * *" (Emphasis added.)

Appellant contends that he did not violate this provision because the form appellee signed stated that in the event commencement of repairs is authorized but completion of repairs is not, a charge will be imposed for disassembly, reassembly or partially completed work. Appellant's argument must fail because although such was disclosed, it was not disclosed prior to accepting the motor vehicle for inspection.

As indicated above, appellee did not see the form until after appellant partially disassembled the engine to see what was wrong. Ohio Adm.Code 109:4–3–13(C)(4) does not define "inspection." In Webster's Ninth New Collegiate Dictionary (1988) 626, "inspection" is defined as "a checking or testing of an individual against established standards." "Inspect" is defined as "1: to view closely in critical appraisal: look over; 2: to examine officially * * * to make an inspection." Thus, the disclosure required in Ohio Adm.Code 109:4–3–13(C)(4) had to have been made before appellant examined or looked over the car. This was not done here. Hence, the trial court did not err in finding that appellant violated Ohio Adm.Code 109:4–3–13(C)(4).

The trial court additionally found that appellant violated Ohio Adm.Code 109:4–3–13(C)(9), which states:

"In any consumer transaction involving the performance of any repair or service upon a motor vehicle it shall be a deceptive act or practice for a supplier to:

" * * *

"(9) Represent that repairs have been made or services have been performed when such is not the fact."

The trial court found that appellant told appellee repairs had begun and had been partially completed when they, in fact, had not. The record indicates that appellee visited Jerry's often during the course of appellant's work on the car. Appellant's son, a mechanic at Jerry's, testified that appellee had "been in numerous times that week taking up all our time," so the son told appellee that the cylinder head had been sent out for repair when it had not been. This violates Ohio Adm.Code 109:4–3–13(C)(9), which prohibits representing that services have been performed when that is not the fact. The trial court did not err in so finding.

In summary, there was sufficient competent, credible evidence supporting the trial court's finding as to each of the above three violations. We note that the

trial court also found appellant was untimely in the repair of appellee's car; however, this aspect will be discussed in the next assignment of error. Accordingly, appellant's first assignment of error is overruled.

█ In his second assignment of error, appellant contends that the trial court erred in awarding $1,008 in damages. As indicated above, the trial court awarded appellee $600, representing $200 for each rule violation, and $408, representing the trebled $136 for untimeliness. Appellant first contends that there was no evidence of damages due to untimeliness and points to the trial court's finding of fact No. 9 that appellee failed to mitigate his damages. We note that finding of fact No. 9 states that appellee failed to mitigate his damages after October 1994 by failing to request return of his vehicle. However, there was sufficient competent, credible evidence supporting the court's finding of $136 in damages prior to October 1994, specifically, costs of insurance in the sum of $137.50 and costs related to acquiring a replacement vehicle.

█ Appellant next contends that the trial court violated R.C. 1345.09(B) in trebling appellee's damages of $136 to $408. R.C. 1345.09(B) states:

"Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater· * * *.''

The trial court found that appellant failed to perform the work in a timely manner. Untimeliness is not declared in any rule adopted under R.C. 1345.05(B)(2) to be a deceptive or unconscionable act. However, prior to this transaction, untimeliness had been determined to be a deceptive act or unconscionable practice, violating R.C. 1345.02 or 1345.03, by various courts of this state. In addition, these court decisions have been made available for public inspection pursuant to R.C. 1345.05(A)(3).[1] Therefore, under R.C. 1345.09(B), the trial court did not err in trebling appellee's actual damages of $136 to $408.

---

1. These cases include *Simpson v. Smith* (1987), Licking M.C., 34 Ohio Misc.2d 7, 517 N.E.2d 276; *State ex rel. Celebrezze v. Gabel; Solar Resources of Am.* (July 18, 1988), Franklin C.P. No. 86CV–12–7458, unreported; *Sinkfield v. Strong* (M.C.1987), 34 Ohio Misc.2d 19, 517 N.E.2d 1051; *State ex rel. Celebrezze v. Cupid's Corner* (Dec. 12, 1984), Cuyahoga C.P. No. 39883, unreported; *Matthews v. Route 53 Marina, Inc.* (Sept. 17, 1987), Ottawa Cty. M.C. No. 86CVF–514, unreported.

■ Appellant also contends the trial court violated R.C. 1345.09(B) in awarding appellee $200 in statutory damages. As noted above, the trial court awarded appellee $200 for each of the three rule violations. The trial court found no actual damages for such violations. Appellant is not clear on exactly why he believes that the court erred in so awarding appellee. We believe that the issue is whether the trial court can make awards for *each* violation, as opposed to one award stemming from one consumer transaction.

The courts of Ohio are split on this issue; however, the majority of the courts have found that where there are separate rule violations caused by separate acts, the consumer is entitled to $200 *per* violation. See *Keller v. Pride Chevrolet, Inc.* (Oct. 12, 1988) Summit App. No. 13536, unreported, 1988 WL 107009; *Gadfield v. Ferris Chevrolet, Inc.* (June 26, 1990), Tuscarawas App. No. 89AP090072, unreported, 1990 WL 94043; *Calderone v. Jim's Body Shop* (1991), 75 Ohio App.3d 506, 599 N.E.2d 848; *Gaylan v. Dave Towell Cadillac, Inc.* (1984), 15 Ohio Misc.2d 1, 3, 15 OBR 243, 245, 473 N.E.2d 64, 66. See, also, *Hahn v. Doe* (Mar. 23, 1995), Franklin App. No. 94APE07–1024, unreported, 1995 WL 127863. (The ruling in this case, by implication, follows the majority view above.)

In an unreported case from this court, we allowed recovery of only $200 when there were no actual damages and there were two separate acts that violated two separate rules. See *Cummins v. Dave Fillmore Car Co., Inc.* (Oct. 27, 1987), Franklin App. No. 87AP2–71, unreported, 1987 WL 19186. However, the express issue presented here was not the subject of an assignment of error. A few courts have made similar findings which limited recovery to $200. See *Eckman v. Columbia Oldsmobile, Inc.* (1989), 65 Ohio App.3d 719, 585 N.E.2d 451, wherein the Hamilton County Court of Appeals affirmed the trial court's holding that a consumer must elect between rescission and damages. In dicta, the court of appeals stated that multiple awards of statutory damages for the *same* injury are not allowed *if* it would multiply the punitive recovery in a commercial transaction. *Id.* at 722, 585 N.E.2d at 452–453. Thus, we can distinguish the *Eckman* case in that here, we have more than one injury; *Buchanan v. Stiving* (Apr. 25, 1994), Richland App. No. 93–CA–75, unreported, 1994 WL 202405, wherein the court of appeals affirmed the municipal court's finding of only one violation of the CSPA, holding that two rules were sufficiently similar to support the trial court's finding of only one violation. Again, we can distinguish this case on the same ground as above; *Couto v. Gibson* (Feb. 26, 1992), Athens App. No. 1475, unreported, 1992 WL 37800, wherein the court of appeals, citing *Eckman, supra,* and in giving guidance to the trial court upon remand, stated that the violations emanated from the same transaction, a lease agreement and, thus, only $200 would be allowed. The question we must answer then is whether the consumer in this case was entitled to $200 for each violation. We hold that he is.

 We disagree with the dicta in the unreported case from our court, *Cummins, supra.* The CSPA is a remedial law designed to compensate for traditional consumer remedies and, thus, must be liberally construed. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933, 935. Ohio's CSPA was modeled after the Uniform Consumer Sales Practices Act, which set forth the policies of protecting consumers from suppliers who commit deceptive and unconscionable sales practices and encouraging the development of fair consumer sales practices. *Thomas v. Sun Furniture Co.* (1978), 61 Ohio App.2d 78, 81, 11 O.O.3d 26, 29, 399 N.E.2d 567, 570.

R.C. 1345.09(B) states:

"For *a* violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:

" * * *

"(B) Where *the* violation was an act or practice to be deceptive or unconscionable by *rule* * * * the consumer may rescind the transaction or recover * * * three times the amount of his actual damages or two hundred dollars, whichever is greater * * *." (Emphasis added.)

Ohio Adm.Code 109:4–3–13(A)(1), (C)(4) and (C)(9) each state that it shall be "*a* deceptive act or practice," and then each provision goes on to delineate the specific act that the Attorney General has ruled is deceptive. Construing R.C. 1345.09(B) along with the provisions in the Ohio Administrative Code liberally, therefore, we conclude that where a supplier is found to have engaged in acts that constitute violations of separate rules or court rulings interpreting R.C. 1345.02 or 1345.03, the consumer is entitled to $200 *per* violation or his or her actual damages for each violation, whichever is greater. This does not, however, preclude a court from finding that the facts are such that only one act occurred that resulted in only one violation or, as in the *Buchanan* case, *supra,* that two rules are so similar as applied to the facts that only one violation is found.

Applying this rationale to the case herein, we find that appellant engaged in three separate acts that violated three different and distinct rules. In addition, appellant engaged in untimely and unworkmanlike behavior that prior publicized court decisions found was a deceptive or unconscionable practice. Thus, appellee was entitled to his actual damages for each violation, if any, or $200 for each violation. Accordingly, the trial court did not err in awarding appellee $408 for his actual damages, trebled, for untimeliness, and $200 for each of the three rule violations, as he had no actual damages due to them.

For the foregoing reasons, appellant's second assignment of error is overruled.

In his third and final assignment of error, appellant contends that the trial court erred in awarding appellee attorney fees of $2,700. Specifically, appellant contends the contract between appellee and his attorney did not contain an agreed fee, and there was insufficient evidence to show the fees were reasonable. R.C. 1345.09(F) authorizes the award of attorney fees in CSPA cases and states:

"The court may award to the prevailing party a reasonable attorney's fees limited to the work reasonable performed, if either of the following apply:

" * * *

"(2) The supplier has knowingly committed an act or practice that violates this chapter."

The Supreme Court of Ohio, in *Bittner v. Tri–County Toyota, Inc.* (1991), 58 Ohio St.3d 143, 569 N.E.2d 464, syllabus, stated:

"When awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2–106(B)."

The Supreme Court also noted that the trial court's determination of attorney fees is not to be disturbed absent an abuse of discretion. *Id.* at 146, 569 N.E.2d at 467. In addition, the record must contain evidence of the time spent and the reasonable rate for the attorney's time. *Albert v. Boatsmith Marine Serv. & Storage, Inc.* (1989), 65 Ohio App.3d 38, 582 N.E.2d 1023.

Here, appellee and his attorney contracted that the attorney fee would be either one third the amount of recovery or $150 per hour, whichever was greater. The trial court found that appellee's counsel spent eighteen hours on appellee's case and awarded appellee $2,700. Appellee's counsel testified at length about each charge. The trial court had before it sufficient evidence to determine a reasonable attorney fee for work reasonably performed. Hence, the trial court did not err in awarding appellee $2,700 for attorney fees pursuant to R.C. 1345.09(F). Accordingly, appellant's third assignment of error is overruled.

Having overruled each of appellant's assignments of error, the judgment of the Franklin County Municipal Court is hereby affirmed.

*Judgment affirmed.*

DESHLER and LAZARUS, JJ., concur.