OPINION
Plaintiff-appellant, Joseph B. Mansour, appeals the judgment of the Butler County Court of Common Pleas dismissing his complaint against defendant-appellant, Vulcan Waterproofing, Inc. ("Vulcan"), and awarding judgment and attorney fees to Vulcan on its counterclaim.
Mansour is a certified public accountant who runs his business out of his home located at 7248 Basswood Drive, West Chester, Ohio. He has custody of his two minor children and uses the basement of his house as a play area for the children. Vulcan is a family-owned Ohio corporation incorporated in 1974. Robert Halpin, Ruth Halpin, and their son, Cory Halpin, are Vulcan's sole shareholders, officers, and directors. Since its incorporation, Vulcan has maintained offices at 5513 Vine Street, Cincinnati, Ohio and 8319 Whisper Way, Dayton, Ohio. Customers can visit the Vulcan offices for brochures and information or to negotiate and finalize contracts.
After seeing a Vulcan yellow pages advertisement, Mansour called Vulcan in March 1996 seeking waterproofing services for his basement. At that time, a basement wall suffered from significant seepage problems due to a water pipe which had previously burst. Cory Halpin visited Mansour's home, but he was unable to provide an estimate due to the water in the basement.
After the pipe was repaired, Mansour again called Vulcan in March 1997. Gary Stamper, a Vulcan employee, examined Mansour's home and wrote an estimate of $3,700 on a business card. Stamper left a pamphlet containing information on the waterproofing services and Vulcan's address. Mansour agreed to pay $3,700 and asked Stamper to send him a contract. The contract was faxed to Mansour, along with the terms of Vulcan's lifetime warranty. The contract stated that $3,700 was due upon the completion of work, but Mansour and Stamper orally agreed that Mansour could pay in two installments, with $1,850 due upon completion of work and $1,850 due thirty days later. No charges were added for the installment arrangement.
On May 5 and 6, 1997, Vulcan serviced Mansour's basement. An invoice was sent to Mansour, but he refused to pay. In July 1997, Mansour complained that the basement still leaked, even though the Vulcan pamphlet stated that it could take as long as ninety days for the waterproofing process to provide full protection. Mansour complained that, within days of Vulcan's work, the basement began leaking worse than before Vulcan waterproofed the basement. After repeated negotiations, Mansour agreed to pay $1,500 if Vulcan returned to perform additional work.
Mansour paid the $1,500 on July 31, 1997. Mansour's check cleared, and Vulcan performed additional work on September 3, 1997, at no additional cost. On September 9 and 10, 1997, Mansour replaced the carpet in his basement, considering the basement waterproofing work complete. He has not contacted Vulcan or any other waterproofing company seeking additional work. Even after installing the carpet, Mansour refused to pay the remaining $2,200 balance due Vulcan for its work.
After repeated attempts to get Mansour to pay failed, Vulcan referred the matter to its attorney, and a mechanic's lien was filed in October 1997 against Mansour's home for $2,200 plus interest. In January 1998, Mansour filed the instant complaint against Vulcan and Robert Halpin, individually. The complaint alleged violations of consumer protection statutes, breach of contract, breach of warranty, and fraud. Vulcan filed an answer and counterclaim seeking the $2,200 balance Mansour had not paid.
A bench trial was held on March 5, 1998. At the beginning of the hearing, Vulcan moved for attorney fees, as it had in a previously filed motion. Mansour, Stamper, and Robert Halpin and Cory Halpin testified. The trial court found that Mansour presented no evidence that Robert Halpin was involved in the making of the contested contract or was engaged in any misconduct, and Halpin was dismissed as a party.
On June 29, 1999, the trial court filed its decision. The trial court found that the waterproofing contract was a consumer transaction covered by the Ohio Consumer Sales Practices Act (R.C.1345.01 et seq.), but Vulcan's estimate and work performance did not violate the act's provisions. The transaction was not within the purview of the Home Solicitation Sales Act (R.C. 1345.21 etseq.) because Mansour, not Vulcan, had initiated the transaction and Mansour was adequately notified about Vulcan's business addresses. The Retail Installment Sales Act (R.C. 1317.01 etseq.) was not applicable because there was no service charge for the installment agreement. There was no evidence of a breach of warranty, breach of contract or deception as to the terms of the warranty, nor was there evidence of fraud or misrepresentation by Vulcan when contracting with Mansour. Mansour's complaint was dismissed.
The trial court additionally found that Mansour contracted to have a dry basement, that he did now have such a basement, and Vulcan was awarded $2,200, plus interest. The trial court found that Vulcan was entitled to attorney fees pursuant to R.C.1345.09(F), because Mansour's suit was retaliatory, groundless, and initiated in bad faith. After a separate hearing, the trial court determined that Vulcan be awarded $14,081 as reasonable attorney's fees. Mansour appeals, raising three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN FINDING THAT THE DEFENDANTS-APPELLEES WERE A CORPORATION AND IN FINDING THAT THE CORPORATION MAINTAINED A BUSINESS ESTABLISHMENT AT A FIXED LOCATION IN THE STATE AT WHICH CUSTOMERS COULD VISIT AND GET INFORMATION AND FINALIZE CONTRACTS.
 In his first assignment of error, Mansour contends that the trial court erred by concluding that Vulcan was a corporation, rather than a sole proprietorship owed by Robert Halpin. Mansour further asserts that the trial court's finding that Vulcan had a fixed business location was against the weight of the evidence.
At trial and now on appeal, Mansour admits that Vulcan was incorporated in 1974. The Vulcan business cards, contract, and warranty presented to Mansour all represented Vulcan as "Vulcan Waterproofing, Inc." Mansour is a certified public accountant, and his trial testimony displayed knowledge of business practices. The arguments that Vulcan is anything but a corporation and that Mansour was unaware of Vulcan's corporate status are absurd at best.
Consumer transactions may be subject to the Home Solicitation Sales Act, which protects consumers from improper at-home business solicitations, unless
 [t]he buyer initiates the contact between the parties for the purpose of negotiating a purchase and the seller has a business establishment at a fixed location in the state where the goods or services involved in the transaction are regularly offered or exhibited for sale.
 R.C. 1345.21(A)(4). Mansour contends that Vulcan did not maintain a business establishment within the meaning of R.C. 1345.21(A)(4) because the Vine Street and Whispering Way locations were not open to the public. Vulcan contends otherwise, relying upon Robert Halpin's testimony that customers can come to the Vulcan premises to obtain information and finalize contracts.
Evaluating evidence and assessing the credibility of that evidence are the primary function of the trier of fact, in this case the trial court, and not an appellate court. Yuhasz v.Mrdenovich (1992), 82 Ohio App.3d 490, 492. The trial court judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Sanders v.Webb (1993), 85 Ohio App.3d 674, 682, jurisdictional motion overruled, 67 Ohio St.3d 1455, quoting Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
In the instant case, there was testimony that customers could come to the Vulcan offices to get information or to negotiate and finalize contracts. Vulcan's addresses were listed on the Vulcan business cards and materials and Mansour admitted that he contacted Vulcan at one of the listed addresses. Although Mansour attacks the credibility of this evidence, weighing the credibility of the evidence is a function of the trier of fact. The trial court believed the testimony presented by Vulcan, and concluded that Vulcan provided sufficient evidence to demonstrate that it operated a business establishment at fixed location within the meaning of the statute.
There was competent, credible evidence in support of the trial court's findings that Vulcan was a corporation, and that Vulcan demonstrated that the transaction was exempt from the Home Solicitation Sales Act. The assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT HELD THAT THE DEFENDANTS HAD NOT MISREPRESENTED THE WARRANTY.
 In his second assignment of error, Mansour contends that the trial court erred by finding that Vulcan neither misrepresented the terms of its warranty nor breached that warranty. Mansour argues that he presented evidence that he and Stamper orally agreed to a warranty different from that included in Vulcan's written warranty.
As noted above, it was for the trial court to hear and weigh the evidence and assess the credibility of that evidence. The trial court concluded that Mansour was notified of the terms of the warranty, which were included in part in the pamphlet given to Mansour by Stamper and included in full in the contract for services. This warranty covered the waterproofing for life, but charged a "nominal" service fee should work be required after five years. The trial court found that as a matter of fact, Mansour did not challenge the terms of the warranty until he decided to litigate the matter. In fact, Mansour received the service he sought, namely, Vulcan provided him with a dry, waterproofed basement. Vulcan returned after its initial work to provide further services, without charge to Mansour, in compliance with its warranty.
The evidence supported the trial court's conclusion that Vulcan did not misrepresent the terms of its warranty or breach the terms of that warranty. The assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT AWARDED ATTORNEY FEES TO DEFENDANTS-APPELLEES PURSUANT TO R.C. § 1345.09(F).
 In his final assignment of error, Mansour contends that the trial court should not have awarded attorney fees to Vulcan. Mansour asserts in the alternative that, even if an award of attorney fees was proper, the amount awarded was excessive.
Reasonable attorney fees may be granted in consumer sales actions pursuant to R.C. 1345.09(F):
 The court may award to the prevailing party a reasonable attorney's fee limited to work performed, if either of the following apply:
 (1) The consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith[.]
 The awarding of attorney fees and the amount any such award pursuant to R.C. 1345.09(F) are left to the trial court's discretion. Bittner v. Tri-County Toyota, Inc. (1991), 58 Ohio St.3d 143, 146. The record must contain evidence of the time spent by the attorney on the case, as well as the reasonable rate for the attorney's time. Crye v. Smolak
(1996), 110 Ohio App.3d 504, 513. When making its determination, the trial court should first calculate the hours reasonably spent on the case times an hourly fee, and the trial court may, but is not required to, modify that calculation by application of the factors listed in DR 2-106(B) of the Code of Professional Responsibility regarding the reasonableness of charged attorney fees. Bittner, 58 Ohio St.3d at 145.
The trial court made detailed findings that Mansour's complaint was retaliatory, frivolous, and instituted in bad faith. The trial court set forth specific facts in support of its conclusion that Vulcan should be awarded attorney fees. The record supports the trial court's findings and conclusion.
The trial court held a separate hearing to determine the amount of attorney fees which were to be awarded to Vulcan. At this hearing, Vulcan presented the testimony of an expert witness, an attorney, who stated that in his experience, the time spent by Vulcan's counsel defending the claim was reasonable, as was the hourly fee charged. This fee, when averaged between the attorneys working on Vulcan's behalf, was $112 per hour. The expert witness testified that in light of his experience with similar cases and relevant ethical considerations, the requested attorney fees were reasonable. The trial court agreed with this opinion, finding the awarded amount was a reasonable amount which was limited to the work reasonably performed on Vulcan's behalf.
There was competent, credible evidence in support of the trial court's decision to award $14,081 to Vulcan in attorney fees. The assignment of error is overruled.
 _______________ WALSH, J.
POWELL, P.J., and VALEN, J., concur.