FRANK D. CELEBREZZE, JR., J.:
{¶ 1} Plaintiff-appellant, Dianna Williams ("appellant"), brings this appeal challenging the Bedford Municipal Court's judgment on her claims for breach of contract, *927 Ohio Consumer Sales Practices Act ("CSPA") and Ohio Administrative Code ("O.A.C.") violations, defamation, and fraud against defendant-appellee, Kia of Bedford ("KOB"). After a thorough review of the record and law, this court affirms the trial court's judgment, albeit for different reasons than those set forth in the trial court's January 30, 2017 judgment entry.
I. Factual and Procedural History
{¶ 2} In November and December 2014, appellant engaged in negotiations with KOB to trade in her 2012 Kia Sportage and lease a 2015 Sportage. At this time, appellant's husband also negotiated and executed two lease agreements with KOB. Various disputes arose during appellant's negotiations regarding the color of the 2015 Sportage, the installation and costs of side rails, the negative equity on the 2012 Sportage, the duration of the lease, and the monthly payments for the 2015 Sportage. The agreement ultimately fell through on December 18, 2014.
{¶ 3} Appellant returned to KOB the following day to speak with a manager about the various disputes that led to the deal falling through and the terms of the lease agreement. She spoke with various KOB employees, but the issues were not resolved. The disagreement between appellant and the KOB employees escalated, and the police were called to the dealership.
{¶ 4} The parties continued to attempt to reach an agreement on the terms of a lease from December 30, 2014 until April 2, 2015, but were unable to do so. On April 11, 2015, appellant entered into a lease agreement with Taylor Kia of Boardman.
{¶ 5} On April 29, 2015, appellant filed a small claims complaint against KOB. This complaint was dismissed without prejudice in July 2015.
{¶ 6} On January 8, 2016, appellant filed a complaint against KOB in the Bedford Municipal Court alleging breach of contract, CSPA and O.A.C. violations, defamation, and fraud. A bench trial commenced on December 13, 2016. A total of seven witnesses, including appellant, testified at trial.
{¶ 7} On January 30, 2017, the trial court returned its verdict. Regarding appellant's breach of contract claim, the trial court concluded that KOB breached the lease agreement by (1) demanding that appellant pay for the installation of side rails on the 2015 Sportage when it was not a term of the lease agreement, and (2) failing to advise appellant about the negative equity on her 2012 Sportage and having her sign the negative equity disclosure box in the lease agreement. However, the trial court concluded that appellant failed to prove any actual economic damages that resulted from the breach. Regarding the CSPA/O.A.C. claims, the trial court concluded that KOB violated (1) O.A.C. 109:4-3-03 by failing to advise appellant that Kia did not manufacture the 2015 Sportage EX in bright silver, and (2) O.A.C. 109:4-3-16 by failing to have appellant sign the negative equity disclosure box in the lease agreement. The trial court awarded appellant $200 in statutory damages for these violations. Finally, the trial court held that appellant failed to meet her burden of proof on her defamation and fraud claims.
{¶ 8} On March 1, 2017, appellant filed the instant appeal challenging the trial court's judgment. Appellant assigns eight errors for review:
I. The trial court erred in calculating actual damages owed to the Appellant.
II. The trial court erred in calculating the treble damages owed to the Appellant.
III. The trial court erred in the application of the whole weight of the evidence *928 to determine that the Appellant was in a better position when she executed the subsequent contract with Kia of Boardman than with [KOB].
IV. The trial court erred in rendering to the Appellant only one statutory award for [KOB's] multiple violations of separate decrees under ORC 1345 et seq[.] and the O.A.C.
V. The trial court erred in determining that the defamatory statements made by [KOB] did not constitute Slander as a matter of law under ORC 2739.01.
VI. The trial court erred in determining that the defamatory statements made by [KOB] were not published to third parties.
VII. The trial court erred by the improper application of the Parol Evidence Rule to determine that the Appellant failed to meet her burden of proof as she failed to show that [KOB's] representations prior to the execution of the contract amounted to fraud.
VIII. The trial court erred in determining whether or not [KOB] acted with malicious intent as claimed in the Appellant's complaint and was argued by the Appellant at trial.
To the extent that appellant's assignments of error and the issues therein are interrelated, they will be addressed together.
{¶ 9} In their appellate brief, KOB raises three cross-assignments of error challenging the trial court's findings that KOB breached the lease agreement, violated the CSPA, and violated O.A.C. 109:4-3-03. KOB did not, however, file a notice of cross-appeal as required by App.R. 3(C)(1), which provides, "[a] person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order * * * shall file a notice of cross appeal within the time allowed by App.R. 4." Accordingly, we decline to address KOB's cross-assignments of error. See Ohio Valley Bus. Advisors, L.L.C. v. AER Invest. Corp. , 8th Dist. Cuyahoga No. 104771, 2017-Ohio-1283, 2017 WL 1283586, ¶ 25.
II. Law and Analysis
{¶ 10} As an initial matter, we note that appellant presents several arguments that relate to the lease agreements that her husband entered into with KOB. Specifically, appellant asserts that her husband made a down payment of $4,000 to pay off the negative equity on appellant's 2012 Sportage. Appellant alleges that KOB failed to apply her husband's $4,000 payment to the negative equity on her 2012 Sportage, incorporated the negative equity into her monthly payments for the 2015 Sportage lease without disclosing this to her, and failed to return the $4,000 "deposit" to her when Kia did not deliver a vehicle to her.
{¶ 11} Appellant's husband is not a party in this case. Appellant's husband entered into agreements with KOB to lease a 2015 Kia Sorento and a 2015 Kia Optima. These lease agreements were signed by appellant's husband, not appellant.
{¶ 12} The lease agreement for the 2015 Kia Sportage was signed by appellant, not her husband. Appellant's lease agreement makes no mention of her husband's lease agreements nor her husband's $4,000 payment. Likewise, the husband's lease agreements make no mention of appellant's lease for a 2015 Sportage, nor her 2012 Sportage trade-in vehicle.
{¶ 13} Therefore, appellant does not have standing to challenge or dispute any of the terms that pertain to her husband's lease agreements. These terms and issues are outside the scope of this appeal. Our review is limited to appellant's negotiations with KOB to lease a 2015 Sportage.
*929 A. Breach of Contract
1. Actual Damages
{¶ 14} Appellant's first and third assignments of error pertain to the trial court's determination that appellant failed to prove actual damages resulting from KOB's breach of the lease agreement. In her first assignment of error, appellant appears to argue that the trial court's judgment that she failed to prove actual damages resulting from KOB's breach of the lease agreement is against the manifest weight of the evidence. In her third assignment of error, appellant argues, in part, that the trial court's determination that she was in a better position under the Taylor Kia of Boardman lease than under the KOB lease agreement is against the manifest weight of the evidence.
{¶ 15} After reviewing the record, we find that the trial court's judgment regarding the actual damages appellant suffered as a result of KOB's breach of the lease agreement is supported by competent, credible evidence. Under the KOB lease agreement, appellant was required to make 48 monthly payments of $449.88, totaling $21,594.24; the amount due at signing was $899.76, and appellant's total payment was $22,444.12.[1] Under the Taylor Kia of Boardman lease, appellant was required to make 36 monthly payments of $394.14, totaling $14,189.04; the amount due at signing was $5,750, and appellant's total payment was $19.944.90.[2]
{¶ 16} Appellant argues that she suffered $4,000 in actual damages as a result of KOB's breach of the lease agreement because in addition to her husband's payment of $4,000 to KOB, she had to pay $4,000 to Taylor Kia of Boardman for the negative equity on her 2012 Sportage. As noted above, appellant's husband's $4,000 payment applied to his lease agreements with KOB, not appellant's lease agreement. Therefore, appellant's actual damages argument regarding her $4,000 payment to Taylor Kia of Boardman fails.
{¶ 17} Based on the foregoing analysis, appellant's first assignment of error is overruled and her third assignment of error in this respect is overruled. Appellant failed to prove that she suffered actual damages as a result of KOB's breach of the lease agreement.
2. Verbal Agreement
{¶ 18} Appellant further argues in her third assignment of error that KOB breached a verbal lease agreement that was entered into on December 30, 2014, between appellant and KOB general manager James Clark. In support of her argument that a verbal lease agreement was entered into, appellant directs this court to the transcription of her meeting with Clark, which she recorded, unbeknownst to Clark, on her cell phone.
{¶ 19} A review of this transcript reflects that there was no lease agreement entered into during this meeting. Clark arranged to meet with appellant to discuss the complaint she filed with the Better Business Bureau. Clark testified at trial that he did not enter into an agreement with appellant during this meeting. Rather, he simply asked appellant what terms she wanted in her lease agreement and indicated that he would communicate this information to Kia's corporate offices and determine whether it was possible to generate a new lease with those terms. Appellant acknowledged at trial that the lease agreement that was purportedly entered into on December 30, 2014, was verbal and that neither she nor Clark signed anything.
*930 {¶ 20} Accordingly, appellant's argument that KOB breached a verbal lease agreement on December 30, 2014, fails. Appellant's third assignment of error is overruled in this respect.
B. CSPA/O.A.C. Violations
{¶ 21} Appellant's second and fourth assignments of error pertain to the trial court's damages award for KOB's CSPA violations. In her second assignment of error, appellant argues that the trial court abused its discretion by failing to award treble and noneconomic damages to her for KOB's CSPA violations.
{¶ 22} The Ohio Consumer Sales Practices Act, R.C. Chapter 1345, protects consumers from suppliers' deceptive or unconscionable sales practices. Richards v. Beechmont Volvo , 127 Ohio App.3d 188, 190, 711 N.E.2d 1088 (1st Dist.1998), citing Thomas v. Sun Furniture & Appliance Co. , 61 Ohio App.2d 78, 399 N.E.2d 567 (1st Dist.1978). "It is a remedial act that courts must liberally construe in favor of the consumer." Id. , citing Einhorn v. Ford Motor Co. , 48 Ohio St.3d 27, 548 N.E.2d 933 (1990).
{¶ 23} Initially, we note that there was no transaction between appellant and KOB. The parties negotiated a lease agreement for a 2015 Sportage; however, the transaction fell through and was never consummated.
{¶ 24} R.C. 1345.09(B), governing a consumer's remedies for CSPA violations, provides:
Where the violation [of R.C. Chapter 1345] was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.
"Under the CSPA a consumer has the option of 'rescinding the transaction or recovering three times the amount of his actual damages or two hundred dollars whichever is greater.' " Brzezinski v. Feuerwerker , 8th Dist. Cuyahoga No. 74288, 2000 WL 1297699, 6 (Sept. 14, 2000), quoting R.C. 1345(B). In order to award treble damages, there must be a finding of actual damages. Nelson v. Pieratt , 12th Dist. Clermont No. CA2011-02-011, 2012-Ohio-2568, 2012 WL 2088635, ¶ 18, citing Baker v. Tri-County Harley Davidson, Inc. , 12th Dist. Butler No. CA98-12-250, 1999 WL 1037262, 3 (Nov. 15, 1999).
{¶ 25} In the instant matter, the trial court concluded that appellant failed to prove actual damages resulting from KOB's CSPA violations. This determination is supported by competent, credible evidence in the record. Because appellant did not suffer actual damages, she is not entitled to an award of treble damages. Accordingly, appellant's second assignment of error is overruled.
{¶ 26} In her fourth assignment of error, appellant argues that she was entitled to a $200 statutory damages award for each CSPA violation. As noted above, the trial court held that KOB violated *931 O.A.C. 109:4-3-03 and 109:4-3-16. However, the trial court only awarded appellant one $200 statutory damages award.
{¶ 27} "The Ohio Supreme Court has never directly addressed the issue of multiple minimum awards for multiple violations of the CSPA versus a single award for multiple violations." Harrel v. Talley , 4th Dist. Athens No. 06CA41, 2007-Ohio-3784, 2007 WL 2137511, ¶ 24. Ohio courts are split on the issue of whether statutory damages for CSPA violations are calculated on a per-violation or a per-transaction basis. See Crye v. Smolak , 110 Ohio App.3d 504, 511, 674 N.E.2d 779 (10th Dist.1996). The majority of Ohio courts allow plaintiffs to recover for each individual violation of the CSPA "if there are separate rule violations caused by separate acts." Id. , citing Keller v. Pride Chevrolet, Inc. , 9th Dist. Summit No. 13536, 1988 WL 107009 (Oct. 12, 1988).
{¶ 28} After reviewing the record in this case, we find that appellant was not entitled to multiple statutory damages awards.
1. Color
{¶ 29} The trial court's determination that KOB violated O.A.C. 109:4-3-03 by promising to find the 2015 Sportage EX in bright silver knowing that the vehicle was not produced in that color and failing to provide appellant with this information, and by failing to disclose this information to appellant when she was offered a red Sportage is supported by competent, credible evidence in the record.
{¶ 30} It is undisputed that (1) appellant initially sought to lease a 2015 Sportage EX in bright silver, (2) KOB did not deliver a bright silver Sportage EX to appellant, and (3) the lease agreement that appellant and KOB attempted to execute on December 18, 2014 was for a red Sportage. However, the relevant inquiry regarding appellant's "bait and switch" claim in Count 4 is whether KOB disclosed to appellant that the 2015 Sportage EX was not manufactured in bright silver. The record reflects that appellant was never informed that the 2015 Sportage EX was not manufactured in bright silver.
{¶ 31} KOB salesman Ewan Dacres testified that on November 25, 2014, he was not aware that the 2015 Sportage EX was not manufactured in bright silver. He explained that after he met with appellant and her husband on November 25, he spent the next day or two trying to find a 2015 Sportage with all of the features appellant wanted in bright silver. He testified that no more than two days after the November 25 meeting, he told appellant that he was unable to find a bright silver 2015 Sportage EX. Dacres was able to locate a 2015 Sportage EX in red, and appellant agreed to lease the red vehicle.
{¶ 32} When appellant went to the dealership on December 1, 2014, a mineral silver Sportage was presented to her. Dacres testified that bright silver and mineral silver are the same color. He explained that when the vehicle is manufactured in Korea, the color is called bright silver, and when the car is manufactured in Mexico or the United States, the color is called mineral silver. (Tr. vol. 1, p. 15.) Dacres stated that the Kia brochure that indicated that the 2015 Sportage EX was not manufactured in bright silver was incorrect.[3] However, Dacres confirmed that when comparing the color bright silver with the color mineral silver, as displayed in the brochure, the colors do not look the same. (Tr. vol. 1, p. 17.)
{¶ 33} Accordingly, the trial court's determination that KOB violated O.A.C. 109:4-3-03 by failing to advise appellant that the 2015 Sportage EX was not manufactured *932 in bright silver is supported by competent, credible evidence in the record. The trial court properly awarded $200 in statutory damages to appellant for this violation pursuant to R.C. 1345.09(B).
2. Negative Equity
{¶ 34} In Count 1 of her complaint, appellant alleged, in relevant part, that KOB violated R.C. 1345.03(B)(2)-(7) and O.A.C. 109:4-3-16(B)(17) when the final price of the 2015 Sportage was increased by adding the negative equity from her 2012 Sportage into her monthly lease payment for the 2015 Sportage, and by refusing to immediately refund the $4,000 deposit. Complaint at ¶ 42. Appellant asserted that KOB's unfair and deceptive acts constituted a breach of contract. She alleged that KOB "retained the $4,000 deposit that was acquired for payment of the negative equity on [her] 2012 Sportage EX[.]" Complaint at ¶ 43.
{¶ 35} In Count 2 of her complaint, appellant alleged that KOB violated O.A.C. 109:4-3-16(B)(16) and (20) by failing to refund the $4,000 deposit to her when a vehicle was not delivered to her. In her appellate brief, appellant argues that KOB violated O.A.C. 109:4-3-16 by failing to properly disclose the negative equity that was being added into the monthly lease payment for the 2015 Sportage.
{¶ 36} The trial court held that KOB breached the lease agreement by failing to advise appellant about the negative equity on her 2012 Sportage and failing to have her sign the "negative equity disclosure box" on the lease agreement verifying this provision. The trial court held that this same conduct-KOB's failure to have appellant sign the negative equity disclosure notice in the lease agreement-constituted a violation of O.A.C. 109:4-3-16. After reviewing the record, we find that the trial court's determination that KOB violated O.A.C. 109:4-3-16 is against the manifest weight of the evidence.
{¶ 37} Initially, we note that appellant's arguments regarding the $4,000 deposit are premised on the assumption that her husband's $4,000 payment paid off the negative equity on appellant's 2012 Sportage. As noted above, the record reflects that this payment was applied to appellant's husband's lease agreements, not appellant's lease agreement. The trial court properly found that the $4,000 payment was incorporated into the husband's lease agreements and that he received a direct benefit from this payment. Accordingly, appellant was not entitled to a refund of the $4,000 when she backed out of the lease agreement for the 2015 Sportage.
{¶ 38} Although the negative equity disclosure box in the lease agreement was not signed, the negative equity from the 2012 Sportage is reflected in the lease agreement. Dacres testified that negative equity is the difference between the "payoff" or the amount of money that is still owed on a car and the current market value of the car. Appellant's lease agreement indicates that the "trade in allowance" for her 2012 Sportage was $14,800 and the "payoff amount" on the 2012 Sportage was $19,451.45. Thus, the "net trade in allowance" for the 2012 Sportage was -$4,651.45.[4]
{¶ 39} KOB sales manager, Joe DelGuidice, opined that the negative equity on appellant's 2012 Sportage was disclosed by the net trade in allowance figure, -$4,651.45, and appellant signed the bottom of the document that contained this information. Likewise, KOB financial services manager, Noah Daniel, testified that the lease agreement indicated that appellant *933 had negative equity on her 2012 Sportage because the net trade in allowance was -$4,651.45. Daniel testified that he normally has customers sign the bottom of the document that contains the negative equity disclosure box and the trade-in vehicle information, rather than having customers sign both the negative equity disclosure box and the bottom of the document. Finally, the trial court surmised that it was "crystal clear" from the lease agreement that KOB was still holding her accountable for the -$4,651.45. (Tr. vol. 3, p. 69.)
{¶ 40} Courts recognize that breaches of contract or warranty can constitute violations of the Consumer Sales Practices Act. See Temple v. Fleetwood Enters. , 133 Fed.Appx. 254, 266 (6th Cir.2005), citing Boyle v. Daimler Chrysler Corp. , 2d Dist. Clark No. 2001-CA-81, 2002-Ohio-4199, 2002 WL 1881157. In this case, however, a binding contract or agreement did not exist between appellant and KOB.
{¶ 41} It is undisputed that the parties negotiated the terms of a lease agreement for a 2015 Sportage, and the lease agreement was signed on December 18, 2014. However, there was no consideration transferred, and thus, the lease agreement was never consummated.
{¶ 42} Appellant acknowledges that she agreed to pay for the cost and installation of the side rails on the 2015 Sportage on December 6, 2014-12 days before the lease agreement was signed. Appellant's reply brief at 2. After appellant signed the lease agreement on December 18, 2014, she was presented with an invoice for the side rails.[5] Despite the fact that she had previously agreed to pay for the side rails, she refused to do so when she received the invoice. When the dispute regarding the cost of the side rails arose, the parties' agreement fell through-appellant walked away from the transaction and left the dealership in her 2012 Sportage.
{¶ 43} Based on the foregoing analysis, we find that the trial court erred by concluding that KOB violated O.A.C. 109:4-3-16. Thus, appellant was not entitled to receive an additional $200 statutory damages award. Appellant's fourth assignment of error is overruled.
C. Defamation
{¶ 44} Appellant's fifth and sixth assignments of error pertain to her defamation claim. In her fifth assignment of error, appellant argues that the trial court erred by determining that the defamatory statements made by KOB employees did not constitute slander pursuant to R.C. 2739.01. In her sixth assignment of error, appellant argues that the trial court erred by determining that the defamatory statements were not published to third parties. We disagree.
{¶ 45} The trial court held that appellant failed to meet her burden of proof because she failed to show the KOB's employee's verbal comments directed to her were published to third parties.
Defamation is a false publication that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or affects the person adversely in his or her trade or business. Barner v. Kroehle , 8th Dist. Cuyahoga No. 87557, 2006-Ohio-5569 [2006 WL 3028766], ¶ 13, citing Matalka v. Lagemann , 21 Ohio App.3d 134, 486 N.E.2d 1220 (10th Dist.1985). To establish a claim for defamation, a plaintiff must show (1) a false statement of fact was made about the plaintiff, (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff suffered injury as a proximate result of the *934 publication, and (5) the defendant acted with the requisite degree of fault in publishing the statement. Am. Chem. Soc. v. Leadscope, Inc. , 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77, citing Pollock v. Rashid , 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1st Dist.1996) ; see also Lucas v. Perciak , 8th Dist. Cuyahoga No. 96962, 2012-Ohio-88 [2012 WL 112983], ¶ 12, citing Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc. , 81 Ohio App.3d 591, 601, 611 N.E.2d 955 (9th Dist.1992).
Swoope v. Osagie , 2016-Ohio-8046, 76 N.E.3d 686, ¶ 28.
{¶ 46} In the instant matter, appellant testified at trial that DelGuidice personally and publically attacked her character on December 19, 2014. DelGuidice testified that appellant came to the dealership on December 19, 2014, and that she was very agitated and disruptive. He recalled telling appellant that she should be ashamed of the way she was acting in front of her son.[6]
{¶ 47} On cross-examination, appellant testified that the conversation she had with DelGuidice during which he made the purportedly defamatory statements took place at a cubicle. She was not aware of anyone who heard this conversation. Appellant asserted that people could have heard the conversation because it was a "public conversation," but confirmed that she did not know whether anyone did, in fact, hear the conversation.
{¶ 48} KOB employee Tim Tallion testified that he "remember[s] hearing the conversation [between appellant and DelGuidice] get loud[.]" (Tr. vol. 2, p. 74.) He explained that appellant was very loud and upset about something. He opined that he was approximately 20 feet away from DelGuidice and appellant when they were conversing. He stated that he could only hear appellant's tone, not the content of the conversation. Tallion confirmed that he did not know what was going on between appellant and DelGuidice, but that appellant was getting loud.
{¶ 49} After reviewing the record, we find that appellant failed to demonstrate that DelGuidice's statement was published.
{¶ 50} Appellant further alleged that KOB employees made defamatory statements to the Bedford Police Department. Count 5 of appellant's complaint alleged, in relevant part, that KOB employees "openly telecommunicated false and defamatory statements to the Bedford Police [Department]." Complaint at ¶ 89. She goes on to allege that the employees "slurred her character" by reporting that she was a nuisance and that she refused to leave the dealership. Appellant testified at trial that Tallion called the police in an attempt to embarrass or cause further harm to her.
{¶ 51} Tallion testified that there was a lot of commotion when appellant returned to the dealership on December 19, 2014. He explained that appellant was very loud and upset about something, so he approached her to see if he could help. Tallion asserted, "I got yelled at, I felt uncomfortable, my customer-I felt like there was an uncomfortable situation for them just because of [appellant's] tone." (Tr. vol. 2, p. 77.) Tallion explained that when he first sat down with appellant, she calmed down, but she became upset again when he was unable to resolve the problem for her. He confirmed that he was getting yelled at *935 and feeling uncomfortable, and he was also worried about other customers feeling uncomfortable.
{¶ 52} Tallion testified that he decided to call the police because he looked around and saw customers looking over at him and appellant. He explained that he was uncomfortable and he believed that the customers were even more uncomfortable than he was. Tallion asserted that appellant was disrupting business. He testified that he told the police officers that there was a customer at the dealership that he asked to leave but refused to do so. However, he did not recall exactly what he told the police dispatcher.
{¶ 53} As noted above, DelGuidice testified that appellant was very agitated and disruptive at the dealership. He explained that a person is disruptive when they are "getting loud, disrupting day-to-day business, may have cursing, anything to that nature would be a disruption in my opinion." (Tr. vol. 2, p. 66.)
{¶ 54} After reviewing the record, we find that appellant failed to demonstrate that Tallion's statements were false.
{¶ 55} Finally, appellant argues that as a result of Tallion's defamatory statements to the police, there is now a written record/report of the December 19, 2014 incident that is "published in the public record files, which could be requested by any current or future employer of the [a]ppellant." Appellant's brief at 24. We disagree.
{¶ 56} Appellant attached a copy of the Bedford Police Department's "call for service" report to her complaint as exhibit Q. The report's narrative provides, in its entirety, "complainant reports a female he asked to leave is still in the building. Female left on her own when officer arrived." The report does not identify appellant by name.
{¶ 57} Based on the foregoing analysis, the trial court properly determined that appellant failed to meet her burden of proof on her defamation claim. Appellant's fifth and sixth assignments of error are overruled.
D. Fraud
{¶ 58} Appellant's seventh and eighth assignments of error pertain to her claim for fraud.
{¶ 59} Fraud requires proof of the following elements: (1) a representation or, where there is a duty to disclose, omission of a fact; (2) that is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. Stancik v. Deutsche Natl. Bank , 8th Dist. Cuyahoga No. 102019, 2015-Ohio-2517, 2015 WL 3899224, ¶ 51.
{¶ 60} In the instant matter, appellant's fraud claim fails under the fifth element. Even if KOB made false and material misrepresentations regarding the lease agreement, appellant cannot demonstrate that she justifiably relied on these misrepresentations because she walked away from the transaction, rather than accepting the 2015 Sportage. Accordingly, the trial court properly determined that appellant failed to meet her burden of proof on her fraud claim.
{¶ 61} Appellant's seventh and eighth assignments of error are overruled.
III. Conclusion
{¶ 62} After thoroughly reviewing the record, we affirm the trial court's judgment. Appellant failed to prove actual *936 damages resulting from KOB's breach of the lease agreement. The trial court properly awarded appellant $200 in statutory damages for KOB's violation of O.A.C. 109:4-3-03. Appellant failed to prove actual damages resulting from KOB's CSPA violation, and thus, she is not entitled to an award of treble damages. The trial court properly found that appellant failed to meet her burden of proof on her defamation and fraud claims.
{¶ 63} Judgment affirmed.
SEAN C. GALLAGHER, P.J., and PATRICIA ANN BLACKMON, J., CONCUR

Defendant's exhibit B.

Defendant's exhibit D.

Plaintiff's exhibit No. 4.

Defendant's exhibit B.

Defendant's exhibit C.

Appellant asserted in her complaint that her three-month old son was with her at KOB on December 19, 2014.